WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


LESEAN GEFFE,                          )
                                       )
                          Plaintiff,   )
                                       )
            vs.                        )
                                       )
KILOLO KIJAKAZI, Acting Commissioner   )
of the Social Security Administration, )
                                       )          No. 3:22-cv-0148-HRH
                          Defendant.   )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Plaintiff LeSean Geffe has timely filed

his opening brief,[1] to which defendant, Kilolo Kijakazi,[2] has timely responded.  Oral

argument was not requested and is not deemed necessary.

<u>Procedural Background</u>

On January 6, 2018, plaintiff filed an application for disability benefits under Title

XVI, alleging that he became disabled on September 23, 2017.  Plaintiff alleges that he is

disabled due to explosive personality disorder, depression, gun shot injury, and ADHD.

_____

[1]Docket No. 14.

[2]Docket No. 15.

-1-

Plaintiff's application was denied initially, and he requested a hearing. His request for a hearing was dismissed on August 5, 2019, because plaintiff failed to appear at his scheduled hearing, primarily because he was incarcerated.[3] On April 27, 2020, the Appeals Council remanded the matter for an administrative hearing. After an administrative hearing on March 25, 2021, an administrative law judge (ALJ) denied plaintiff's application for benefits. On April 20, 2022, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 14, 2021, decision the final decision of defendant. On June 21, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

## General Background

Plaintiff was born on July 8, 1996. Plaintiff was 21 years old on the date he applied for benefits. Plaintiff has a high school education but "require[d] specialized instruction in the areas of math, writing, and reading...."[4] Plaintiff graduated from high school in May 2017 at the age of 20. Plaintiff's past work included janitorial and fast-food work, although both of these were for very short periods of time.

## The ALJ's Decision

The ALJ applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

---

[3]Admin. Rec. at 103.

[4]Admin. Rec. at 260.

[5]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since January 6, 2018, the application date...."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: left foot drop, lower left extremity polyneuropathy, intermittent explosive disorder, bipolar disorder, substance abuse in remission...."[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

_____

[5](...continued)

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 18.

[7]Admin. Rec. at 18.

in 20 CFR Part 404, Subpart P, Appendix 1...."[8] The ALJ considered Listing 1.18 (abnormality of a major joint), Listing 1.21 (soft tissue injury or abnormality under continuing surgical management), and Listing 11.14 (peripheral neuropathy)."[9] The ALJ also considered the Section 12.00 mental listings.[10] The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate limitations in understanding, remembering, or applying information; in concentrating, persisting or maintaining pace; in interacting with others; and in adapting or managing oneself.[11]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except as follows. He can perform occasional stooping. He can perform no crouching, crawling, kneeling, balancing, or climbing ramps, stairs, ropes, ladders, scaffolds. He can never work at heights, ambulate across uneven surfaces, or have exposure to extreme cold, fumes, odors, dust, or gases. He is able to remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level one and two jobs. He should have no contact with the public. He is capable of working in proximity to but not in

---

[8]Admin. Rec. at 19.

[9]Admin. Rec. at 19.

[10]Admin. Rec. at 19.

[11]Admin. Rec. at 20-21.

coordination with co-workers, and having occasional contact with supervisors.[12]

The ALJ found that "the possibility of symptom magnification erodes the reliability of the claimant's subjective report."[13] The ALJ also discounted plaintiff's pain and symptom statements because they were not consistent with the medical evidence, there was evidence of secondary-gain focus, he made only sporadic efforts to engage in mental-health treatment, his symptoms improved with treatment, his statements were inconsistent with his work activity and daily living activities, and his statements contained internal inconsistencies.[14]

The ALJ found Dr. Peterson's opinion "generally persuasive."[15] The ALJ considered Dr. Caldwell's opinion and found that it had some support.[16] The ALJ found Dr. Kiehl's

---

[12]Admin. Rec. at 21.

[13]Admin. Rec. at 27.

[14]Admin. Rec. at 25-31.

[15]Admin. Rec. at 31. On July 19, 2018, Dr. Peterson, Anchorage Fracture and Orthopedic Clinic, opined that plaintiff "should not be involved in any type of work that requires prolonged standing or walking." Admin. Rec. at 652.

[16]Admin. Rec. at 31. On April 28, 2018, Dr. Caldwell, a nonexamining source, opined that plaintiff could occasionally lift/carry 50 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; could frequently lift/pull with his left lower extremity but otherwise was unlimited as to pushing/pulling; could frequently climb ramps/stairs and balance; could occasionally climb ladders/scaffolds and crouch; was unlimited as to stooping, kneeling, and crawling; should avoid moderate exposure to extreme cold, fumes, odors, dust, gases, poor ventilation, and hazards; and should avoid concentrated exposure to extreme heat, wetness, humidity, noise and vibration. Admin. Rec. at 645-648.

-5-

opinion somewhat persuasive.[17] The ALJ found Dr. Gonzales' opinion not fully persuasive.[18]

---

[17]Admin. Rec. at 32.  On June 27, 2018, Dr. Royal Kiehl, a nonexamining source, opined that plaintiff was not significantly limited in his ability to carry out short and simple instructions, make simple work-related decisions, and ask simple questions or request assistance; was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and was markedly limited in his ability to interact appropriately with the general public, to maintain socially appropriate behavior and to adhere to basic standards of cleanliness.  Admin. Rec. at 94-95.  Dr. Kiehl further opined that plaintiff was "able to sustain concentration, persistence and pace for simple 1-2 step" tasks, that plaintiff "struggles with frustration and irritation and would be successful in positions with no public interaction and very limited interactions with co-workers and supervisors," and that plaintiff "is capable of the basic mental demands of unskilled work with no general public contact."  Admin. Rec. at 94-95.

[18]Admin. Rec. at 32.  Dr. Gonzales did a psychological evaluation on June 13, 2018, and opined that plaintiff

> is considered fully able to manage funds in his best interest. Based on his social functioning, and vocational and educational history, his ability to understand, remember and apply information is considered not impaired.  Based on current social functioning, h[is] ability to socially interact is considered moderately impaired.  Based on his self-report, his ability to concentrate, persist at tasks, and pace abilities is considered mildly impaired.  Based on social functioning and self-report, his ability to adapt/manage himself is considered not impaired.

Admin. Rec. at 642.

-6-

The ALJ considered the testimony of plaintiff's mother, Eva Geffe, and noted that there were some inconsistencies between her testimony and the evidence.[19]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[20]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" such as a table worker, a semi-conductor bonder, and an addressing clerk.[21]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, since January 6, 2018, the date the application was filed...."[22]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence

---

[19]Admin. Rec. at 33.  Eva Geffe completed a third-party function report on February 16, 2018.  Admin. Rec. at 293-301.  She also provided a letter on March 10, 2021.  Admin. Rec. at 340.

[20]Admin. Rec. at 33.

[21]Admin. Rec. at 34.

[22]Admin. Rec. at 35.

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff argues that the ALJ erred in discounting his symptom statements as they related to his mental impairments.[23] If "the ALJ 'determines that a claimant for Social Security benefits is not malingering[24] and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms []he alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms

---

[23]Plaintiff does not allege any error "in regard to his physical impairments." Motion for Miscellaneous Relief [etc.] at 3, n.1, Docket No. 14. Plaintiff concedes that "[t]he limitation to sedentary work adequately address[ed the] limitations related to his leg and foot injury." Id.

[24]The ALJ did mention that there was "the possibility of symptom magnification...." Admin. Rec. at 27. But, the ALJ "stopped [well] short of characterizing the evidence as proof of malingering[.]" Smartt v. Kijakazi, 53 F.4th 489, 497 (9th Cir. 2022).

only by providing specific, clear, and convincing reasons for doing so.'" Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015)).

The ALJ discounted plaintiff's symptom statements as they related to his mental impairments because they were not consistent with the medical evidence, there was evidence of secondary-gain focus, plaintiff made only sporadic efforts to engage in mental-health treatment, plaintiff's symptoms improved with treatment, plaintiff's statements were inconsistent with his work activity and daily living activities, and his statements contained internal inconsistencies.[25] Plaintiff argues that none of these reasons were clear and convincing.

The first reason the ALJ gave was that plaintiff's symptom statements as they related to his mental impairments were inconsistent with the medical evidence. "'Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.'" Smartt, 53 F.4th at 499 (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008)). But, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." Id. at 495 (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

---

[25]Admin. Rec. at 25-31.

The ALJ found that "the mental-health evidence overall does not corroborate the claimant's allegations such as extreme inability to control his anger or antisocial impulses."[26] In support of this finding, the ALJ cited to plaintiff's June 2018 consultative examination with Dr. Gonzales and noted that at that time, plaintiff "had some reports of symptoms consistent with his allegations, but his presentation was generally benign."[27] The ALJ cited to plaintiff's April 2020 telephonic appointment with ANP Clifford and noted that at this appointment, plaintiff

> had generally cooperative rapport, normal speech, euthymic [mood], appropriate and full-range affect, goal-directed and linear thought process, lack of psychosis or active suicidal ideation, intact attention/concentration, intact memory, alertness and full orientation, intact abstraction, normal fund of knowledge, and good insight and judgment.[28]

The ALJ also cited to plaintiff's June 2020 video conference appointment with Dr. Doran and noted that at this appointment, plaintiff's "mental status exam was generally benign, including fair concentration, normal rapport and motor activity, and cooperative behavior."[29] Finally, the ALJ cited to plaintiff's objective mental status findings which were assessed on exams for both his physical impairments and his mental impairments. The ALJ noted that "[w]hile [plaintiff] showed some irritability or anxiety at times, providers often noted him

---

[26]Admin. Rec. at 25.

[27]Admin. Rec. at 26 (citing Admin. Rec. at 640-642).

[28]Admin. Rec. at 28 (citing Admin. Rec. at 732-734).

[29]Admin. Rec. at 28 (citing Admin. Rec. at 721-723).

to be cooperative and/or calm and to show appropriate mood/affect."[30] The ALJ also pointed out that plaintiff's objective mental status findings showed that "[h]e was able to provide normal eye contact, behave appropriately, and be pleasant" and that "[h]e presented with normal grooming and hygiene."[31] The ALJ noted that "[a]lthough [plaintiff] at times endorsed thoughts of harming others or passive suicidal ideation, providers noted him to present without such thoughts...."[32] The ALJ also noted that plaintiff "showed no obvious cognitive impairment, presenting alert and oriented, with intact memory and/or fund of knowledge, intact attention, normal speech, and at times, normal insight and judgment...."[33]

Plaintiff argues that this first reason was not clear and convincing. First, plaintiff argues that many of the mental status findings cited by the ALJ have nothing to do with the limitations that he has alleged flow from his mental impairments. Plaintiff contends that his "mental impairments interfered, primarily, with his ability to interact appropriately with others, leading to frequent conflicts."[34] Plaintiff thus argues that it was of no import that his objective mental status findings showed that he had no cognitive impairment, was alert and oriented, had intact memory and attention, had normal speech, and had a logical thought

_____

[30]Admin. Rec. at 26 (citing Admin. Rec. at 723, 730, 748, 751, 788, 850).

[31]Admin. Rec. at 26 (citing Admin. Rec. at 723, 751, 776, 850).

[32]Admin. Rec. at 26 (citing Admin. Rec. at 723, 730, 850).

[33]Admin. Rec. at 26 (citing Admin. Rec. at 723, 730, 748, 758, 776, 788, 850).

[34]Motion for Miscellaneous Relief [etc.] at 3, Docket No. 14.

-11-

process. Plaintiff argues that such findings have nothing to do with whether his mental impairments interfered with his ability to get along with others.

Plaintiff also argues that the ALJ ignored appointments at which his symptoms were present. For example, plaintiff points to an August 13, 2018, appointment, at which the provider noted that plaintiff "was extremely uncooperative and hostile[.]"[35] Plaintiff also mentions a September 13, 2018, appointment with Dr. McWilliams, plaintiff's PCP. On that day, Dr. McWilliams noted that plaintiff was "seated with hands clenched in fists in his lap. He repeatedly has bursts of angry outbursts directed at his mother, his ex-girlfriend, and in general. Often uses strong profanity and makes vague statements about wanting to punch people, though no overt homicidal thoughts."[36] And, plaintiff refers to a July 2020 appointment with Dr. Doran, in which she noted that plaintiff was irritable and anxious.[37] Plaintiff also argues that the ALJ ignored evidence that he had been suspended from school on at least two occasions,[38] had been placed in inpatient treatment,[39] been involved in criminal cases,[40] and "had to leave the state because of his inability to regulate his

---

[35]Admin. Rec. at 712.

[36]Admin. Rec. at 707.

[37]Admin. Rec. at 850.

[38]Admin. Rec. at 615.

[39]Admin. Rec. at 615, 625.

[40]Admin. Rec. at 732-733.

-12-

behaviors[.]"[41]  Plaintiff seems to be suggesting that this evidence is at odds with the ALJ's conclusion that he would be able to perform simple and routine work tasks as long as he did not have to "work with the public, closely with other co-workers, or in a setting with frequent supervisory needs."[42]

The first reason the ALJ gave for discounting plaintiff's symptom statements as they related to his mental impairments was clear and convincing.  The medical evidence of record supports the ALJ's finding that plaintiff suffered from the severe impairment of intermittent, explosive disorder, but the medical evidence of record does not support plaintiff's contention that this impairment resulted in an extreme inability to control his anger.  The medical evidence that the ALJ relied upon, including plaintiff's largely normal, mental status exams, is substantial evidence supporting the ALJ's finding that plaintiff's claim that he could not get along with others due to his inability to control his anger was inconsistent with the medical evidence of record.

The second reason the ALJ gave for discounting plaintiff's symptom statements as they related to his mental impairments was that there was evidence of secondary-gain focus. "[A]n ALJ may consider motivation and the issue of secondary gain in evaluating symptom testimony[.]"  Jake R. v. Comm'r, Soc. Sec. Admin., 421 F.Supp.3d 1006, 1015 (D. Or. 2019) (citation omitted).

---

[41]Motion for Miscellaneous Relief [etc.] at 10, Docket No. 14.

[42]Admin. Rec. at 29.

-13-

The ALJ found that "the record contains evidence of secondary-gain focus...."[43]  In support of this finding, the ALJ cited to plaintiff's August 2018 Behavior Health appointment, at which plaintiff "demand[ed] a written letter diagnosing him with ADHD, ODD, Intermittent Explosive Disorder, and PTSD."[44]  The provider, Ariel Mollanen,

> attempted to explain that it is not responsible or possible to make the diagnoses requested in one visit.  He called his mother and gave verbal consent for BHC to speak to mom.  Mom clarified that they are requesting these diagnoses for his application for SSI and that he needs a referral to psychiatry because he has not been connected to psychiatric care for some time.  BHC explained the process for a referral to psychiatry, recommended followup with BHC and PCP.  Mom was frustrated that this could not happen today and that BHC was unable to tell her exactly how long it might take for him to get in with psychiatry and/or get requested diagnoses (if diagnoses are even applicable/accurate) but verbalized understanding.[45]

The ALJ also cited to Linda Hodson's August 23, 2018, treatment notes, in which she "[r]ecommend[ed] following up with BHC for three to four visits, in the context of sobriety alone prior to referral to ongoing psychiatric care as most recent visits felt more geared to SSDI [vs] symptom relief and treatment commitment."[46]

The ALJ's second reason was not clear and convincing.  All the evidence cited by the ALJ shows is that plaintiff was attempting to get benefits.  And, as one court has noted, "[i]f

---

[43]Admin. Rec. at 26.

[44]Admin. Rec. at 711.

[45]Admin. Rec. at 712.

[46]Admin. Rec. at 653.

-14-

the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible." Ratto v. Secretary, Dep't of Health and Human Services, 839 F.Supp. 1415, 1429 (D. Or. 1993).

The third reason given by the ALJ for discounting plaintiff's symptom statements as they related to his mental impairments was that there had been a lack of treatment for these impairments. The ALJ found that plaintiff "had minimal engagement in treatment during the period at issue" and that there was a "lack of committed engagement in counseling and medication treatment...."[47]

Plaintiff first argues that this was not a clear and convincing reason because although an ALJ may rely on a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to discount a claimant's statements, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), the ALJ must also "'consider possible reasons" a claimant "'may not comply with treatment or seek treatment consistent with the degree of [his] complaints[.]'" William P. v. Comm'r of Social Sec., 446 F.Supp.3d 715, 726 (E.D. Wash. 2020) (quoting SSR 16-3p). Plaintiff argues that, at the administrative hearing, the ALJ did not ask him about why he had not engaged in counseling on a more consistent basis or why he had not sought more treatment for his mental impairments. Plaintiff argues that the ALJ thus failed to fulfill his duty to fully and fairly develop the record.

_____

[47]Admin. Rec. at 25, 27.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). This duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Id. at 459–60. Here, there was sufficient evidence in the record as to why plaintiff had not sought treatment, including that plaintiff did not think anything was wrong with him[48] and at times he was incarcerated.[49] The ALJ had no duty to ask plaintiff about this issue at the administrative hearing.

Plaintiff next points out that he testified that he did drug and alcohol classes for 5-6 months while he was in Arizona.[50] The treatment records from this "counseling" in Arizona are not in the record, and plaintiff argues that the ALJ had a duty to attempt to obtain these records. Plaintiff insists that the ALJ failed to fulfill his duty to fully and fairly develop the record when he failed to obtain plaintiff's "counseling" records from Arizona.

The ALJ's duty to fully and fairly develop the record was not triggered by plaintiff's vague testimony about the "drug and alcohol" classes he took in Arizona. Moreover, it is plaintiff's responsibility to ensure that all of his medical evidence was made part of the record. See 42 U.S.C. § 423(d)(5)(A) (claimant must furnish medical and other evidence of

---

[48]Admin. Rec. at 625.

[49]Admin. Rec. at 103.

[50]Admin. Rec. at 51.

-16-

his disability). If plaintiff thought these records were important, he should have submitted them to the agency.

Plaintiff also takes issue with the ALJ's finding that he failed to comply with taking his medications. The ALJ noted that plaintiff had stopped taking Seroquel in October 2018, but plaintiff contends that the record shows that he stopped taking it because it was causing fatigue.[51] Plaintiff argues that the ALJ did not explain why this was not a reasonable reason to stop taking the prescribed medication. Moreover, plaintiff points out that he later started taking Seroquel again, though this medication was stopped while he was incarcerated.[52]

The ALJ also noted that plaintiff had "reported a lack of consistent medications because his mother was against them[,]"[53] but plaintiff argues that the treatment note to which the ALJ cited for this proposition did not appear to be discussing his current situation, but rather his past psychiatric treatment. The treatment note in question was plaintiff's June 4, 2020, appointment with Dr. Doran. In the "History of Present Illness" section, it was noted that there had been "[n]o consistent psychotropics as his Mom was against medications."[54] And, plaintiff points out at the time of this treatment note, he was in fact taking

---

[51]Admin. Rec. at 683.

[52]Admin. Rec. at 733.

[53]Admin. Rec. at 28.

[54]Admin. Rec. at 722.

-17-

Gabapentin as Seroquel had made him more combative and irritable.[55]  Thus, plaintiff argues

that the ALJ's finding that he had failed to comply with his prescribed medications was based

on "an inaccurate representation of the record" and as such, "can not constitute a specific,

clear, and convincing reason for rejecting" his symptom statements as they related to his

mental impairments.  Rawa v. Colvin, 672 Fed.Appx. 664, 666 (9th Cir. 2016).

The medical evidence of record establishes that plaintiff did not comply with taking

the medication that was prescribed for his mental impairments.[56]  Plaintiff did complain of

the side effects related to Seroquel,[57] but it also seems that at times he simply did not take the

medication because he did not want to.

But, even if the record supports the ALJ's finding that plaintiff failed to seek

treatment and failed to comply with taking his medications, which it does, plaintiff argues

that this still was not a clear and convincing reason.  Plaintiff argues that there is ample

evidence in the record that establishes that his failure to comply with his medications and his

failure to seek more treatment for his mental impairments was related to his mental

impairments.  The Ninth Circuit has long recognized that a claimant "'may have failed to

seek psychiatric treatment for his mental condition, but it is a questionable practice to

chastise one with a mental impairment for the exercise of poor judgment in seeking

---

[55]Admin. Rec. at 721, 726.

[56]Admin. Rec. at 683, 707, 729, 733, 849.

[57]Admin. Rec. at 683, 686, 691, 696.

-18-

rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting

Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Here, there is sufficient evidence to suggest that plaintiff's failure to engage in

treatment and to comply with his medications was a function of his mental impairments.  As

plaintiff points out, it has been noted that he had limited judgment,[58] had a history of

behaviors consistent with his impairments such as suspension from school and violation of

protective orders,[59] and exhibited such behaviors during the relevant time period, including

ongoing substance abuse and incarceration.  Plaintiff's failure to follow up on treatment

recommendations would be consistent with this lack of insight and control.  The ALJ's third

reason was not a clear and convincing reason to discount plaintiff's symptom statements as

they related to his mental impairments.

The fourth reason given by the ALJ for discounting plaintiff's symptom statements

as they related to his mental impairments was that plaintiff's symptoms improved with

treatment.  That a claimant's "symptoms improved with treatment," can "in appropriate cases

... serve as a clear and convincing reason for discounting the claimant's testimony."  Colleen

G. v. Comm'r of Social Sec., --- F.Supp.3d ---, 2022 WL 4078524, at *3 (W.D. Wash. 2022).

Here, the ALJ found that the mental health treatment notes "indicate that [plaintiff's] anger

and impulsiveness were not intractable" and that plaintiff derived benefit from taking

[58]Admin. Rec. at 617, 625, 629, 723, 727, 851.

[59]Admin. Rec. at 615.

-19-

Seroquel.[60]  In support of this finding, the ALJ cited to treatment notes from September 14, 2018, in which Dr. McWilliams noted that plaintiff had been started on Seroquel and at his appointment that day, plaintiff had "appear[ed] calm" and was able to "hold[] a normal conversation[.]"[61]  The ALJ also cited to treatment notes from September 22, 2019, in which plaintiff "note[s] good results from seroquel[,]"[62] and September 28, 2019, in which it was noted that at a 50mg dose of Seroquel, plaintiff's "anger was under better control...."[63]

Plaintiff argues that all this evidence shows is that he had some limited periods of improvement.  "An ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement ... with an understanding of the patient's overall well-being and the nature of [his] symptoms.'" Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016) (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)).  But, according to plaintiff, that is exactly what the ALJ did here. Plaintiff insists that the record does not show that he had any sustained periods of improvement in his symptoms related to his mental health impairments.  And, even with the Seroquel, plaintiff points out that Dr. McWilliams was constantly changing his dosage[64] and

---

[60]Admin. Rec. at 27.

[61]Admin. Rec. at 705.

[62]Admin. Rec. at 696.

[63]Admin. Rec. at 691.

[64]Admin. Rec. at 683, 686, 691, 696.

-20-

then eventually put plaintiff on Gabapentin instead.[65]  Plaintiff argues that the ALJ improperly focused on a few reports of improvement and ignored the fact that he had ongoing difficulties with maintaining composure.  Plaintiff contends that the best example of this was at the administrative hearing when on two occasions, he got very agitated by the ALJ's questioning and needed to calm himself down.[66]  Plaintiff argues that this is likely how he would interact with supervisors and co-workers.  Thus, he argues that the fact that his symptoms may have improved with treatment was not a clear and convincing reason for the ALJ to discount his symptom statements as they related to his mental impairments.

The ALJ's fourth reason was clear and convincing.  Contrary to plaintiff's argument, the ALJ did not discount plaintiff's "testimony merely because [his] symptoms wax[ed] and wane[d] in the course of treatment."  Garrison, 759 F.3d at 1017.  Rather, the ALJ focused on the fact that plaintiff's symptoms improved when he actually took his medication.

The fifth reason the ALJ gave for discounting plaintiff's symptom statements was that plaintiff's statements were inconsistent with his reported activities.  "An ALJ may ... consider 'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'"  Smartt, 53 F.4th at 499 (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007)).  "Even if the claimant experiences some difficulty or pain, h[is] daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims

---

[65]Admin. Rec. at 728.

[66]Admin. Rec. at 48-49, 51-52.

Case 3:22-cv-00148-HRH   Document 17   Filed 12/12/22   Page 21 of 28

of a totally debilitating impairment.'" Id. (quoting Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)).

The ALJ found that "[t]he record contains evidence of activities inconsistent with the claimant's allegations of disability."[67] More specifically, the ALJ found that "[t]he record contains further evidence of activities inconsistent with the claimant's allegations of disabling mental symptoms."[68] By way of example, the ALJ cited to plaintiff's report that he had spent "a year in the lower states staying with relatives[,]" and that plaintiff "attended podiatry appointments with his girlfriend and new baby[.]"[69] In connection with plaintiff's travel, the ALJ noted that plaintiff "confirmed that he traveled by air to stay with family in Arizona and Atlanta, and that he went through security checkpoints, sat on crowded airplanes, changed planes, and navigated the airports via wheelchair service."[70] In connection with the podiatry visits, the ALJ pointed out that at one visit, plaintiff "engaged socially with his provider and shared pictures of his baby, reporting having made some changes, living in a better area, and not hanging out with some of his old friends...."[71] The ALJ cited to the fact that plaintiff testified that "he had been pursuing proceedings to gain

---

[67]Admin. Rec. at 29.

[68]Admin. Rec. at 29.

[69]Admin. Rec. at 29-30 (citing Admin. Rec. at 658).

[70]Admin. Rec. at 30 (citing Admin. Rec. at 662).

[71]Admin. Rec. at 30 (citing Admin. Rec. at 662).

-22-

custody or visitation with his two young children, and this included taking drug classes three times per week online and taking parenting classes."[72]  The ALJ also pointed out that plaintiff's mother testified that plaintiff was "very good with his toddler son and capable of performing childcare duties, with help from her."[73]  Finally, the ALJ cited to the fact that plaintiff goes to the grocery store with his mother sometimes and "sometimes goes to the neighboring store on his own to get a snack or personal items."[74]  The ALJ found that the foregoing evidence

> indicates that [plaintiff] is able to build relationships and relate to familiar people on a regular basis, negotiate basic public interactions appropriately (either out of necessity or just for a snack), remember and carry out travel procedures, make adaptive arrangements, behave appropriately in controlled situations such as security lines and airplanes, handle the irritations and basic necessary care tasks inherent in tending a young child, follow through on goal-directed activities, and curb impulses to follow habits that interfere with his goals[.[75]]

The ALJ explained that the foregoing activities were "not consistent with disabling limitations from issues such as marked learning and attention deficits, inability to contain anger or feelings of being 'heated,' or uncontrollable destructive impulses."[76]

---

[72]Admin. Rec. at 30.

[73]Admin. Rec. at 30.

[74]Admin. Rec. at 30.

[75]Admin. Rec. at 30.

[76]Admin. Rec. at 30.

Plaintiff, however, argues that this was not a clear and convincing reason. The Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from h[is] credibility as to h[is] overall disability.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). Rather, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical [or mental] functions that are transferable to a work setting.'" Id. (quoting Fair, 885 F.2d at 603). Plaintiff argues that all the ALJ has done here is set out a few random activities, which is not sufficient. Plaintiff contends that ALJs are permitted to consider whether a claimant's daily activities are inconsistent with their allegations of disability and argues that none of the activities cited by the ALJ could be considered daily activities. Plaintiff argues that "no reasonable person would conclude that the rare performance of an activity over a period of several years was indicative of a higher level of functioning than alleged...."[77]

Plaintiff also argues that although he did attend some appointments with his girlfriend and new baby and was attempting to regain custody of his children, these activities did not indicate the leveling of functioning that the ALJ found. Plaintiff argues that the ALJ failed to consider why plaintiff did not have custody of his children and why he was having to take parenting classes. Plaintiff insists that when the record is viewed as a whole, it shows that

---

[77]Motion for Miscellaneous Relief [etc.] at 12-13, Docket No. 14.

he could, at times, interact appropriately with others and regulate his behavior, but that at other times, his abilities in these areas were severely limited.

Plaintiff also argues that the ALJ overstated his abilities in terms of traveling. Plaintiff points out that he testified that he used a wheelchair when traveling,[78] which plaintiff contends means that he was accompanied at all times by either airport personnel or a family member and was probably given preferential treatment such as being able to bypass long lines at security and being able to board early.

The ALJ's fifth reason was clear and convincing. Plaintiff's ability to stay with relatives, have a girlfriend, take parenting classes, and travel undermined his allegation that he was disabled because his mental impairments interfered with his ability to interact appropriately with others.

The sixth reason given by the ALJ for discounting plaintiff's symptom statements as they related to his mental impairments was that plaintiff's statements contained internal inconsistencies. An ALJ may discount a claimant's testimony due to "inconsistencies ... in claimant's testimony...." Delgadillo v. Comm'r of Social Sec. Admin., --- F.Supp.3d --- 2022 WL 17038552, at *6 (D. Ariz. 2022) (citation omitted). The ALJ found that "[t]he record ... contains inconsistencies in the claimant's statements."[79] By way of example, the ALJ pointed out that "at the hearing, the claimant insisted that two notes about him 'working' at

---

[78]Admin. Rec. at 50.

[79]Admin. Rec. at 30.

the state fair referred to a single time when he assisted his brother-in-law in setting up a vendor booth for a few hours."[80]   But, the ALJ pointed out that plaintiff's mother had testified that he had helped his brother-in-law on two different occasions and also that "the record reflects reports of him 'working,' at least one of them at the fair, several months apart[.]"[81]   The ALJ also pointed out that plaintiff "testified that he simply cannot work, as any attempt to do so will cause him further problems" but that his mother testified that plaintiff "often asks her if he can go to work, and she is the one who discourages him."[82]   As the final example, the ALJ noted that the provider at Northern Orthopedic had made reference to plaintiff working as a roofer, but that plaintiff denied ever doing such work.[83]   The ALJ thought that it was "unlikely" that the provider "would write this note without being sure of its contents, because the information would be surprising and impressive to her given the claimant's limited ankle and foot mobility."[84]

Plaintiff does not dispute that this was a valid reason for discounting his pain and symptom statements as they related to his physical impairments.[85]   But, plaintiff argues that

---

[80]Admin. Rec. at 30.

[81]Admin. Rec. at 30.

[82]Admin. Rec. at 30.

[83]Admin. Rec. at 30.

[84]Admin. Rec. at 30-31.

[85]Motion for Miscellaneous Relief [etc.] at 14, Docket No. 14.

-26-

these internal inconsistencies cannot be considered a valid reason for the ALJ to have discounted his symptom statements as they related to his mental impairments because the ALJ did not explain how plaintiff's work activities contradicted his allegations regarding his mental functioning. Defendant, however, argues that plaintiff's lack of credibility in one area can carry over to his credibility in another area. See, e.g., Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010) (ALJ properly found that discrepancies in claimant's testimony about his physical limitations and his ability to "work on [a] ranch" applied to "any allegation of total disability[,]" including allegation that claimant "could not 'put up' with most people"); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly inferred that claimant's "lack of candor" regarding her use of alcohol and marijuana "carrie[d] over to her description of physical pain").

The ALJ's sixth reason was not clear and convincing. The internal inconsistencies cited by the ALJ all have to do with plaintiff's statements as they related to his physical limitations. The statements in question all concerned the physical aspects of working. Plaintiff's "lack of candor" about his limited work attempts has little, if anything, to do with whether his statements regarding his mental impairments should be believed.

In sum, the ALJ gave three clear and convincing reasons for discounting plaintiff's symptom statements as they related to his mental impairments. The ALJ's first, fourth and fifth reasons were clear and convincing. The other three reasons, the second, third, and sixth

reasons, were not clear and convincing. The question then becomes whether the ALJ's errors as to these three reasons constitute harmful error.

The Ninth Circuit has "held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." Molina, 674 F.3d at 1115, superseded on other grounds by 20 C.F.R. § 404.1502(a)). "In this context," the Ninth Circuit has "said that an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." Id. (citation omitted). Here, the ALJ gave three reasons, which were supported by the record, for disbelieving plaintiff's symptom statements as they related to his mental impairments. These three reasons amply support the ALJ's conclusion that plaintiff was not disabled, and the ALJ's errors as to other three reasons do not "negate the validity" of this conclusion. Id. Any errors the ALJ made in discounting plaintiff's symptom statements as they related to his mental impairments were harmless.

## Conclusion

Based on the foregoing, the final decision of defendant is affirmed. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 12th day of December, 2022.

/s/ H. Russel Holland
United States District Judge

-28-